**PITTSFIELD NATIONAL BANK, Executor of Estate of Samuel G. Colt, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 59–111.**

United States District Court
D. Massachusetts.
March 3, 1960.

Alex J. MacFarland, Herrick, Smith, Donald, Farley & Ketchum, Boston, Mass., for plaintiff.

Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for defendant.

SWEENEY, Chief Judge.

This is an action to recover estate taxes alleged to have been erroneously assessed against and collected from the estate of the plaintiff's decedent. The action was tried on an agreed statement of facts and was very well briefed.

### Findings of Fact

The agreed statement of facts is adopted as the Court's Findings of Fact. From it it appears that all conditions precedent to the right of the plaintiff to bring this action have been satisfied. The decedent's first wife executed her last will on July 31, 1945. She died on January 13, 1947. Pursuant to the provisions of paragraph 1, Article III of her will a trust was established of $200,000. The decedent was to receive the income therefrom during his lifetime "together with all or such part of the principal of same as he may from time to time request, he to be the sole judge of his needs". The remainder was to go to four children.

The decedent at all relevant times had substantial funds and property of his own and at no time requested the trustees to pay over any part of the principal, nor was any of it used by the decedent or paid to him. At the time of his wife's death, he was seventy-five years old.

The Commissioner determined that the power given to the decedent to invade principal as specified was a general power of appointment under Section 2041 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2041. He therefore included

the total value of the trust at the time of the decedent's death in the gross estate of the decedent, and assessed a deficiency of $114,139.14 against the plaintiff.

The plaintiff advances two arguments against the validity of the tax: (1) that the power quoted above was not a general power of appointment within the meaning of the tax statute, and (2), that it would be unconstitutional to include in the Estate of Samuel G. Colt in 1955 property which had passed tax free to remaindermen in 1947. In the view I take of the plaintiff's first contention, I do not reach the constitutional issue.

■ The relevant portions of Section 2041 provide that " * * * the value of the gross estate shall include the value of all property * * * to the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942. * * * " For purposes of this section "the term 'general power of appointment' means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that * * * A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment".

■ There is no question that Samuel G. Colt received a valid power to invade the trust corpus, and the case resolves itself to the narrow issue whether this interest was limited by an "ascertainable standard", and is therefore excluded from the definition of a general power of appointment. As a preliminary matter it must be decided to what extent state or federal laws are determinative of this issue. The defendant apparently claims that the case is to be decided wholly on the basis of federal law; that is, the relevant section of the Internal Revenue Code, the Regulations thereunder, and the decisions under the analogous chari-

table deduction provision, 26 U.S.C. § 2055. But the plaintiff urges that the meaning of the instrument and the existence and nature of the standard to be applied to it depend on the law of Massachusetts. Gammons v. Hassett, 1 Cir., 1941, 121 F.2d 229, I agree with the plaintiff. Neither the statute nor the Regulations create a new federal standard, and the charitable deduction cases also have had to turn to local law for determinations of the measurability of powers of invasion of principal.

■ A number of Massachusetts cases have clearly established that the words "comfort", "support", and "maintenance" create an objective and limited standard for measuring the right to invade principal. Thus, in Lumbert v. Fisher, 1923, 245 Mass. 190, 139 N.E. 446, 447, the right to invade corpus "if necessary for her comfort, maintenance and support" was held to limit the life tenant to the use of principal to what is "reasonable, taking into account her age and physical condition, her station in life and all the circumstances". So also in Nunes v. Rogers, 1940, 307 Mass. 438, 30 N.E.2d 259; Homans v. Foster, 1919, 232 Mass. 4, 121 N.E. 417; Johnson v. Johnson, 1913, 215 Mass. 276, 102 N.E. 465; Stocker v. Foster, 1901, 178 Mass. 591, 60 N.E. 407, and in the charitable deduction cases in this Circuit, Blodget v. Delaney, 1 Cir., 1953, 201 F.2d 589; Gammons v. Hassett, supra, powers similarly qualified were held to be exercisable only in accordance with the same narrow standard.

The word "need" according to its dictionary definition and the cases interpreting it, has an even narrower and more explicit meaning than the words discussed above, i. e. "want of the means of subsistence, necessity". The principal case explaining the word, Lincoln v. Willard, 1937, 296 Mass. 549, 6 N.E.2d 774, 776, requires a showing of "actual financial or physical necessity" before the life tenant could exercise a power to sell "if she should need to during her lifetime". See also Lovett v. Farnham, 1897, 169 Mass. 1, 47 N.E. 246.

The power in this case, which at first blush appears to be absolute, is clearly modified by the phrase "he to be the sole judge of his needs". Unless this phrase is considered to limit the preceding broad power, it is without any significance whatsoever. The grant of the power must be read in its entirety, and so read I rule that it was a grant of a power to invade corpus only in the event the donee was in financial or physical need. This conclusion becomes even more compelling upon an examination of the circumstances surrounding the creation of the trust and the provisions concerning the disposition of the remainder.

This is a trust created by the will of a wealthy woman for a wealthy husband, who under the will also receives one-half of the residue of his wife's property outright. It is a trust which includes detailed and complex provisions for the disposition of the remainder to the children of Mrs. Colt, evincing a belief that the remainder would not be touched by the life tenant. It is quite apparent that Mrs. Colt intended principally to provide for the remaindermen and to give her husband a power of invasion only in the unlikely event that he should need any part of the principal without subjecting the property again to taxation.

Conclusions of Law

From the foregoing I find and conclude

(a) that the power given Samuel G. Colt is the kind of power which is expressly excluded by Section 2041(b) (1) (A) of the Internal Revenue Code from treatment as a "general power of appointment";

(b) that the value of the trust property was erroneously included in the decedent's gross estate, and the plaintiff is entitled to recover an amount to be computed by the parties in accordance with the stipulation.

Judgment may be entered for the plaintiff after a recomputation of its tax liability.